Joseph G. HAMM, Petitioner,

v.

DEPARTMENT OF LOCAL GOVERN-
MENT FINANCE,[1] Respondent.

No. 49T10–9906–TA–131.

Tax Court of Indiana.

April 29, 2003.

1. The State Board of Tax Commissioners (State Board) was originally the Respondent in this appeal. However, the Legislature abolished the State Board as of December 31, 2001. 2001 Ind. Acts 198 § 119(b)(2). Effective January 1, 2002, the Legislature created the Department of Local Government Finance (DLGF) and the Indiana Board of Tax Review (Indiana Board). IND.CODE §§ 6–1.1–30–1.1; 6–1.5–1–3 (West Supp.2001); 2001 Ind. Acts 198 §§ 66, 95. Pursuant to Indiana Code § 6–1.5–5–8, the DLGF is substituted for the State Board in appeals from final determinations of the State Board that were issued before January 1, 2002. IND.CODE § 6–1.5–5–8 (West Supp.2001) (eff.2002); 2001 Ind. Acts 198 § 95. Nevertheless, the law in effect prior to January 1, 2002 applies to these appeals. I.C. § 6–1.5–5–8. See also 2001 Ind. Acts 198 § 117. Although the DLGF has been substituted as the Respondent, this Court will still reference the State Board throughout this opinion.

Joseph G. Hamm, Petitioner Pro Se.

Steve Carter, Attorney General of Indiana, Ted J. Holaday, Deputy Attorney General, Indianapolis, IN, Attorneys for the Respondent.

FISHER, J.

Joseph G. Hamm appeals the final determination of the State Board of Tax Commissioners (State Board) valuing his real property for the March 1, 1995 assessment. While Hamm raises multiple issues, the Court finds that it need only address one: whether the State Board erred in applying a neighborhood desirability rating of "excellent" to Hamm's property.[2] For

---

2. Hamm claims that his assessment is invalid because the State Board used mass appraisal techniques to arrive at his assessed value. Hamm argues that all property in Indiana is

the reasons stated below, the Court RE-VERSES the State Board's final determination.

## FACTS AND PROCEDURAL HISTORY

Hamm owns land and a residential improvement in the Eagle Ridge subdivision in Marion County, Indiana. For the 1995 assessment, Hamm's property was assessed with a neighborhood desirability rating of "excellent." On December 13, 1995, Hamm appealed his assessment to the Marion County Board of Review (BOR). The BOR denied Hamm any relief.

Hamm subsequently filed a Form 131 Petition for Review of Assessment (131 Petition) with the State Board, again challenging his neighborhood desirability rating. The State Board held a hearing and on April 19, 1999, issued a final determination, making no change to Hamm's neighborhood desirability rating.

On June 1, 1999, Hamm initiated an original tax appeal. The Tax Court conducted a trial on February 18, 2000. The parties presented oral arguments on Octo-ber 31, 2000. Additional facts will be supplied as needed.

## ANALYSIS AND OPINION

### Standard of Review

▮ This Court gives great deference to the final determinations of the State Board when it acts within the scope of its authority. *Thousand Trails, Inc. v. State Bd. of Tax Comm'rs*, 757 N.E.2d 1072, 1075 (Ind. Tax Ct.2001). This Court will reverse a final determination of the State Board only when its findings are unsupported by substantial evidence, arbitrary, capricious, constitute an abuse of discretion, or exceed statutory authority. *Id.*

▮ Furthermore, a taxpayer who appeals to this Court from a State Board final determination bears the burden of showing that the final determination was invalid. *Id.* The taxpayer must present a prima facie case by submitting probative evidence, i.e., evidence sufficient to establish a given fact that, if not contradicted, will remain sufficient. *Id.* Once the taxpayer presents a prima facie case, the burden shifts to the State Board to rebut

---

entitled to individual assessment. However, Hamm's claim raises no issue for this Court to decide, as the Legislature has provided that the State Board may prepare its property assessment rules in consideration of "mass appraisal principles and practices," IND.CODE § 6-1.1-31-3(4) (1998), which are defined as "[the] appraisal of property on a wholesale scale[.]" IND. ADMIN. CODE tit. 50, r. 2.2-1-35 (1996). Hamm also claims that his assessment is invalid because the Marion County Land Valuation Commission did not give him copies of its summary reports in violation of Indiana Administrative Code title 50, rule 2.2-2-8(c), which provides that "[f]ailure of an official to provide ... *a representative of the state board of tax commissioners* [ ] with access to official records is evidence of misconduct in office." IND. ADMIN. CODE tit. 50, r. 2.2-2-8(c) (1996) (emphasis added). Hamm

is not a representative of the State Board; therefore, this claim raises no issue for the Court. Hamm then complains that the notice provided for the public hearing prior to his assessment was "clandestine," (*see* Pet'r Br. at 5), yet admits that the notice complied with all legal requirements. Because Hamm alleges no violation of the law, the Court will not address this issue either. Finally, Hamm raises numerous general issues that he either did not raise in his 131 Petition or did not support with specific argument or authority. Consequently, the Court will not address them. *See Deer Creek Developers, Ltd. v. Dep't of Local Gov't Fin.*, 769 N.E.2d 259, 261 n. 2 (Ind. Tax Ct.2002); *Whitley Prods., Inc. v. State Bd. of Tax Comm'rs*, 704 N.E.2d 1113, 1119 (Ind. Tax Ct.1998), *review denied*, 714 N.E.2d 174 (Ind.1999).

the taxpayer's evidence and support its findings with substantial evidence. *Id.*

## Discussion

■ The issue in this case is whether the State Board erred in applying a neighborhood desirability rating of "excellent" to Hamm's property. Hamm argues that noise, a lack of adequate infrastructure, a difficult-to-access location, and destructive wildlife all militate against a rating of "excellent" for his neighborhood. The State Board, on the other hand, while acknowledging that Hamm's neighborhood lacks some amenities, insists that many features make the area exceptional and therefore the rating of "excellent" is proper. (Cert. Admin. R. at 266.) The State Board is incorrect.

■ Under the State Board's rules, neighborhood desirability is a factor used in calculating physical depreciation for residential improvements. IND. ADMIN. CODE tit. 50, r. 2.2–7–9(c) (1996). It constitutes "a composite judgment of the overall desirability based on ... the extent of residential benefits arising from the location of the dwelling." IND. ADMIN. CODE tit. 50, r. 2.2–7–7.1(f)(7) (1996). "Accordingly, an evaluation of neighborhood desirability looks beyond the improvement itself to external features of the property's location that may affect its value." *Corey v. State Bd. of Tax Comm'rs,* 674 N.E.2d 1062, 1065 (Ind. Tax Ct.1997). "The rating level describes the *balance* between desirable and undesirable factors in the improvement's location." *Id.* (emphasis added). In striking this balance, location of a parcel is simply the beginning of the analysis, as land values "may deviate substantially throughout a geographic area." *See* IND. ADMIN. CODE tit. 50, r. 2.2–4–13(c) (1996). "The boundaries of the geographic area and the characteristics of the area deter-

mine the amount of variation in value." *Id.*

The State Board's rules note that "[i]t is impossible to create a precise formula that measures every variable of location and converts those variables into a precise value." *Id.* Nevertheless, the State Board established a range of neighborhood desirability ratings with guidelines as to their application to "agricultural homesites and rural residential parcels." *See id.* Hamm's neighborhood desirability rating was "excellent," which the State Board defines as "a prestigious, high value area." 50 IAC 2.2–7–7.1(f)(7)(A). More specifically, an "excellent" rating

> indicates that the location is exceptional. The desirable location is a factor of the proximity to high quality scenic views or natural or manmade recreational facilities. These features may be a lake, golf course, swimming area, country club, or tennis area. Other factors may include easy access to major urban areas, major roads, estate settings of manicured lawns, or wooded areas. This type of location may include building restrictions which dictate the size and cost of structures being built.

50 IAC 2.2–4–13(c)(1).

Hamm bears the burden of proving that his neighborhood desirability rating is incorrect. *See Corey,* 674 N.E.2d at 1065–66. He argues that his neighborhood desirability rating should be "good." The State Board's rules define "good" as an "attractive and desirable area." 50 IAC 2.2–7–7.1(f)(7)(C). More specifically, a "good" rating "indicates that the location is pleasant. Generally, this location is an improving area with good access to shopping, schools, and major roads. This location may be in proximity to recreational facilities." 50 IAC 2.2–4–13(c)(3).

In an effort to meet his burden, Hamm submitted evidence showing that his neigh-

borhood is subject to significant noise pollution. Indeed, his neighborhood is directly beneath the flight path of jets flying in and out of the Indianapolis International Airport. Air traffic passes over Hamm's neighborhood and literally rattles his house from 1 a.m. to 6 a.m. Moreover, small planes from the Eagle Creek Airport at times fly approximately 200 feet over his house, creating significant noise. Additionally, noise from the automobile races at Raceway Park carries into Hamm's neighborhood on Fridays. (Joint Exs. 16O, 16P, 17, & 64 at 2.)

Hamm also submitted evidence that access to public transportation that can take residents into major urban areas is ten miles away. Furthermore, his neighborhood can be reached only by a county road and West 46th Street. The latter is approximately sixteen feet wide and in need of shoulder repair. It cannot accommodate two lanes of traffic, has drainage problems, and is frequently impassable in the winter. Because there is no city snow removal in Hamm's neighborhood, school buses will not negotiate West 46th Street on very snowy days, leaving neighborhood children stranded at home if their parents are unable to take them to school. If snow falls while the children are in school, the school buses will not drop them off at their homes. Instead, the buses drop the children off miles from the neighborhood where they have to be retrieved by their parents. (Joint Exs. 12C, 12D, 17, & 64 at 3.)

Hamm also submitted evidence showing that his neighborhood lacks city water, sewer, and electricity. It also lacks good phone lines and fire hydrants. Hamm draws water from a well, except during power surges and power outages, at which time he has no electricity to pump water. During some outages, people in Hamm's neighborhood go up to three days without

running water. Moreover, voice traffic on the phone lines often bleeds into other voice traffic, a situation the phone company states is caused by standing water on underground phone cables; the phone lines, however, are not repaired unless they cease working altogether. Also, the lack of fire hydrants in the neighborhood drives up the cost of homeowner's insurance, and in some cases, homes cannot be insured at all. (Joint Exs. 17 & 64 at 3). Finally, Hamm submitted evidence indicating that wildlife destroys property in his neighborhood. Deer invade gardens, which has necessitated the erection of electric fences. Furthermore, beaver destroy trees, raccoons break into houses and garages, and coyotes threaten pets. (Joint Exs. 17 & 64 at 4.)

Given Hamm's evidence showing the less than desirable aspects of his neighborhood, the Court concludes that Hamm's evidence establishes a prima facie case that his neighborhood, on balance, is not "exceptional" and therefore does not deserve an "excellent" rating. Consequently, the burden shifted to the State Board to show that the neighborhood desirability rating of "excellent" was correct. *See Corey,* 674 N.E.2d at 1066. "While the determination of neighborhood desirability is largely a qualitative one, such a judgment still must be supported by substantial evidence." *Id.*

The State Board claims that Hamm's neighborhood desirability rating of "excellent" is justified by "Eagle Creek Reservoir, wooded areas and some manicured lawns." (R. at 266.) Furthermore, the State Board concluded that "[t]he location of this development offers serenity while still in [a] somewhat . . . close proximity to major metropolitan areas." *Id.* As for the noise, the State Board said that "[m]ajor airports . . . in large metropolitan areas are usually common. If a parcel

were situated directly beside such an area, reducing the rating would be justifiable." *Id.*

The State Board's mere reference to various features of Hamm's neighborhood does not tip the balance away from Hamm's evidence and toward an "excellent" rating; rather, the State Board must offer evidence showing *why* these features outweigh the undesirable features. *See Corey,* 674 N.E.2d at 1065 (indicating that the neighborhood desirability rating requires a balancing of factors). More specifically, Eagle Creek Reservoir, "wooded areas," and the "somewhat" close proximity of Hamm's neighborhood to major metropolitan areas are not elements of a neighborhood desirability rating of "excellent"—a rating of "excellent" requires proximity to "high quality scenic views or natural or manmade recreational facilities" and "may include *easy access* to major urban areas[.]" 50 IAC 2.2–4–13(c)(1) (emphasis added). The State Board's final determination does not address the quality of the view from Hamm's neighborhood, nor does it address the proximity of Hamm's neighborhood to the reservoir or whether the reservoir is used for recreation. Furthermore, Hamm's evidence shows that he is ten miles from public transportation and at times cannot enter or exit his neighborhood because of weather. The State Board never rebutted these showings.

Also, the State Board's rules do not simply refer to "manicured lawns." Rather, the State Board's rules refer to "*estate settings* of manicured lawns[.]" *Id.* (emphasis added). The State Board's final determination says nothing about whether Hamm's neighborhood is an estate setting. Finally, the State Board's assertion that Hamm's neighborhood "offers serenity" is nothing more than a conclusory statement, not substantial evidence rebutting Hamm's showing of significant air traffic and race car noise, as well wildlife nuisances. *See Park Steckley I v. Dep't of Local Gov't Fin.,* 779 N.E.2d 1270, 1274 (Ind. Tax Ct.2002) (holding that a conclusory statement is not substantial evidence).

Without an evidentiary basis for a State Board final determination, the Court cannot properly review it. *Corey,* 674 N.E.2d at 1066. In this case, because the State Board provided no evidence to support its neighborhood desirability rating, the Court holds that the State Board's assessment is not supported by substantial evidence. *See id.* Accordingly, the Court REVERSES the State Board's final determination on this issue and REMANDS it to the Indiana Board of Tax Review (Indiana Board) [3] for further consideration consistent with this opinion.

## CONCLUSION

For the aforementioned reasons, the Court REVERSES the State Board's final determination on Hamm's neighborhood desirability rating and REMANDS this issue to the Indiana Board with instructions to refer the matter to the Marion County Property Tax Board of Appeals [4] to assess

---

3. All cases that would have previously been remanded to the State Board are now remanded to the Indiana Board of Tax Review (Indiana Board). IND.CODE § 6–1.1–15–8. Final determinations made by the Indiana Board are subject to review by this Court pursuant to Indiana Code § 6–1.1–15. IND. CODE §§ 6–1.5–5–7; 33–3–5–2.

4. The Marion County Board of Review (BOR) initially heard Hamm's appeal on December 13, 1995 pursuant to Indiana Code Section 6–1.1–15–1. *See* IND.CODE § 6–1.1–15–1 (1993). However, the Legislature reconstituted all county boards of review as of January 1, 1999, replacing them with "property tax assessment boards of appeal." *See, e.g.,* 1997

Hamm's property with a neighborhood desirability rating of "good" pursuant to Indiana Code Section 6–1.1–15–8(a) (Supp. 2002).

See also 230 F.3d 974.

Ind. Acts 6 § 71 (codified as amended at Ind.Code § 6–1.1–15–1 (Supp.2002)).